IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JUAN CARLOS MARTINEZ,        §
TDCJ No. 2372055,            §
                             §
           Plaintiff,        §
                             §
V.                           §            No. 3:22-cv-1870-K-BN
                             §
DALLAS POLICE DEPARTMENT,    §
ET AL.,                      §
                             §
           Defendants.       §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Juan Carlos Martinez, now a Texas prisoner, filed a *pro se* civil rights complaint alleging that five City of Dallas police officers (only one identified by name) used excessive force while arresting him in May 2021. *See* Dkt. Nos. 3 & 7.

The Court granted Martinez leave to proceed *in forma pauperis* ("IFP") under the Prison Litigation Reform Act (the "PLRA"). *See* Dkt. Nos. 4 & 5.

Martinez's lawsuit was then referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade. *See* Dkt. No. 8.

As ordered, the City of Dallas filed a report under *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), and Martinez filed a response to this report, *see* Dkt. Nos. 9-16.

And, after screening Martinez's claims, as detailed below, the undersigned recommends that the Court dismiss this lawsuit with prejudice under 28 U.S.C. § 1915A(b).

**Legal Standards**

Under the PLRA, where prisoners (whether incarcerated or detained pending trial) seek relief from a governmental entity or employee, a district court must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Because this language tracks that of Federal Rule of Civil Procedure 12(b)(6), the Court should apply the pleading standards as set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Under these standards, Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, but it does require "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557).

On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *cf. Bryant v. Ditech Fin., L.L.C.*,

No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

And, while a court must accept a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

So, to avoid dismissal for failing to state a claim upon which relief may be granted under Section 1915A(b)(1), plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

A *Martinez* report is one "tool" a district court may use to screen claims under Section 1915A. *Hamer v. Jones*, 364 F. App'x 119, 122 n.2 (5th Cir. 2010) (per curiam) ("This court has adopted the procedures used in *Martinez v. Aaron* … as a tool by which an administrative record is constructed to assist in assessing prisoner litigation under 28 U.S.C. § 1915." (citing *Norton v. Dimazana*, 122 F.3d 286, 292-93 (5th Cir. 1997))).

And, as the United States Court of Appeals for the Fifth Circuit has more recently explained,

> [a] district court may obtain a *Martinez* report to frame its evaluation of a prisoner's *in forma pauperis* claim. "A *Martinez* report is produced as a result of prison officials' investigating the prisoner's complaints and compiling an administrative record that acts like an affidavit to aid the district court in screening the complaint." The report serves only to "sort and clarify issues raised in a pro se complaint."

*Thompson v. Tex. Dep't of Criminal Justice*, 67 F.4th 275, 280 (5th Cir. 2023) (footnotes omitted).

So information provided through "[a] *Martinez* report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits." *Newby v. Quarterman*, 325 F. App'x 345, 354 (5th Cir. 2009) (per curiam) (citing *Shabazz v. Askins*, 980 F.2d 1333, 1334-35 (10th Cir. 1992)); *accord Cardona v. Taylor*, 828 F. App'x 198, 201 (5th Cir. 2020) (per curiam) (collecting cases).

And, in general, "if the *Martinez* report conflicts with the *pro se* plaintiff's allegations, the district court must accept the plaintiff's allegations as true, not the

records in the report." *Davis v. Lumpkin*, 35 F.4th 958, 964 (5th Cir. 2022) (citation omitted); *see also Thompson*, 67 F.4th at 280 (approving "[t]he district court['s] reliance] on the 'more complete record' in the *Martinez* report to elucidate details about [a plaintiff's alleged] medical evaluations" where "nothing in the district court's opinion [ ] contradict[ed] the claims in [the plaintiff's] initial pleadings").

## Analysis

Martinez alleges that, just before midnight on May 29, 2021, he was approached by police, "got scared," and fled. He next alleges that, after he made it 50 feet, he was apprehended by officers. That is when, according to Martinez, that he was subjected to unconstitutionally excessive force. And Martinez alleges that, after his arrest – and due to his injuries – he was taken to a hospital before he was transported to the jail.

The factual content pleaded by Martinez primarily supports allegations of unconstitutionally excessive force.

A claim "that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *accord Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) ("Excessive-force claims are 'governed by the Fourth Amendment's "reasonableness" standard.'" (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014))).

To support his claim that officers violated the Fourth Amendment, Martinez provided verified responses to the Court's screening questionnaire and thereby

amended his allegations. *See* Dkt. No. 7; *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (verified responses to interrogatories issued to "[t]o aid in the determination of whether an IFP complaint is frivolous," "become part of the plaintiff's pleadings" (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996))).

And, in that filing, Martinez supports his claims of excessive force by "refer[ring the Court] to Body Camera." Dkt. No. 7 at 5.

Body or dash cam footage – providing a contemporaneous account that either confirms or negates what the state actors allegedly did – may be considered more than mere evidence of a Fourth Amendment violation, as such footage is more like a contract's terms and thus is "central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011); *see, e.g.*, *Benfer v. City of Baytown, Tex.*, 120 F.4th 1272, 1278 n.2 (5th Cir. 2024) ("Because the expert report, which is incorporated into Benfer's complaint, refers to Calvert's dash cam and bodycam footage, we may consider the footage at this stage.").

So, by incorporating this footage by reference, Martinez makes it "part of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993))); *cf. Hodge v. Engleman*, 90 F.4th 840, 844-45 (5th Cir. 2024) ("Although the court may rely on documents that the pleadings incorporate by reference, Hodge did not attach the video evidence to the pleadings, nor did the

pleadings refer to the videos sufficiently to incorporate them. Therefore, by reviewing the 'appended video evidence,' the district court moved beyond the pleadings and to the summary judgment stage." (citations omitted)).

And, "where video recordings are included in the pleadings … the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon*, 16 F.4th at 1163 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); footnote omitted); *see also Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 298 (5th Cir. 2023) (per curiam) ("If an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, 'the exhibit and not the allegation controls.' Here, the Video was attached to Montgomery County and Montes's joint motion to dismiss and referenced by Sligh in her operative complaint. Accordingly, to the extent that the Video contradicts Sligh's allegations, the Video controls." (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004))).

So, to the extent that the *Martinez* report provides the Court the body cam footage referenced in Martinez's pleadings, the report does not "conflict[] with the *pro se* plaintiff's allegations," and, so, the Court is not required to "accept [Martinez's] allegations as true" (rather than "[the footage provided through] the report"). *Davis*, 35 F.4th at 964. Instead, the Court may properly consider that footage to screen Martinez's Fourth Amendment claim based on unconstitutionally excessive force while still honoring the rule that "[a] *Martinez* report may not be used to resolve

material disputed fact findings when they are in conflict with the pleadings or affidavits." *Newby*, 325 F. App'x at 354.

I.    Martinez has not plausibly pleaded a claim of unconstitutionally excessive force.

To plausibly plead a claim of unconstitutionally excessive force, a plaintiff must allege facts to show or from which a court may infer "that he 'suffered an injury that resulted directly and only from a clearly excessive and objectively unreasonable use of force.'" *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) (cleaned up; quoting *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (citing *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020))); *cf. Delacruz v. City of Port Arthur*, No. 1:18-CV-11, 2019 WL 1211843, at *7 (E.D. Tex. Mar. 14, 2019) (considering a Rule 12(b)(6) motion to dismiss, "[t]he central question is whether Plaintiffs have pleaded facts that plausibly suggest the Officers' conduct was clearly excessive and objectively unreasonable").

As the Fifth Circuit has explained,

> [t]his is an objective standard. The use of force is not excessive and unreasonable if "the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to their underlying intent or motivation." Many factors are relevant: "With 'careful attention to the facts and circumstances of each particular case,' courts consider 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Courts will consider "not only the need for force, but also the relationship between the need and the amount of force used." And the reasonableness is "judged from the perspective of a reasonable officer on the scene," instead of the "20/20 vision of hindsight."

*Allen*, 65 F.4th at 744 (cleaned up); *see also Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021) (When analyzing excessive force claims, courts "consider the facts

knowable to the defendant officers at the time the officers used force, and we must be careful to avoid second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." (cleaned up)); *Hatcher v. Bement*, No. 3:14-cv-M-BN, 2015 WL 1511106, at *4 (N.D. Tex. Apr. 3, 2015) ("To gauge the objective reasonableness of the force, a court 'must balance the amount of force used against the need for force.' … The inquiry into reasonableness is fact specific." (cleaned up; quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008); citation omitted)).

Martinez alleges that, once officers caught up to him, one officer "swung [him] to the ground," while another officer "held [his] left arm twisting it and securing it of any threat," while yet another officer "began to strike [Martinez] on [his] face 4 to 6 times." Dkt. No. 7 at 2; *see also id.* at 4.

As stated above, Martinez's incorporating body cam footage by reference in his pleadings allows the Court to consider that footage as offered through the *Martinez* report to screen a claim to which the footage is central – such as Martinez's claim that the force used by officers violated the Fourth Amendment, under which the Court must gauge the objective reasonableness of the force.

But, to disregard Martinez's alleged account of the incident and to allow what the videos depict to control requires a clear – or genuine – conflict between what the videos depict and what is alleged, considered on a fact-by-fact basis. *See Kokesh v. Curlee*, 14 F.4th 382, 385 n.2 (5th Cir. 2021) ("Although all alleged facts are taken as if they are true, facts established by a video record control when they clearly

contradict the facts contained in a pleading…. There are several points of material fact on which the video clearly contradicts Kokesh's alleged facts. On these facts, the video will control." (citing *Scott*, 550 U.S. at 380-81; *Riley*, 355 F.3d at 377)); *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2011 WL 3567419, at *9 (N.D. Tex. Aug. 15, 2011) (*Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940), "instruct[s] that a genuine conflict between the complaint and a pleading exhibit requires that the court accept the exhibit rather than the factual allegations as true.").

As the Fifth Circuit has noted, in discussing how *Scott*'s limited holding alters summary judgment burdens,

> [d]espite the usual rule that courts should adopt the plaintiff's version of the facts when the defendant moves for summary judgment, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." A court "should not rely on such visible fiction" and should "view the facts in the light depicted by the videotape." The "record" in *Scott* that created the blatant contradiction was the video of the chase.

*Garcia v. Orta*, 47 F.4th 343, 350 (5th Cir. 2022) (cleaned up); *see also Ramirez v. Martinez*, 716 F.3d 369, 374-75 (5th Cir. 2013) (observing that where a video does not capture "every particular element of [an] altercation" it would not necessarily "blatantly contradict [a plaintiff's] version of the facts").

The applicable altercation between Martinez and the officers is documented by at least one body cam video that provides the context missing from Martinez's alleged version of events. And the context provided by that video allows the Court to gauge the reasonableness of the officers' use of force and thus find that at least that video "blatantly contradicts" Martinez's allegations to the extent that those allegations are

intended to plead that the use of force was unconstitutionally excessive.

That video reflects that, once Martinez was tackled to the ground, and while officers huddled over him to gain control over him, he indeed was punched, including in the face, but he also actively resisted being handcuffed and struggled with two officers to the extent that one perceived that Martinez was reaching for the officer's weapon, while another officer repeatedly instructed Martinez to "let go of it" – raising a reasonable inference that Martinez was reaching for – or had his hand on – a weapon.

Measured against the applicable *Graham* factors – in particular, "whether the suspect poses an immediate threat to the safety of the officers or others" and "whether he is actively resisting arrest or attempting to evade arrest by flight," *Cloud*, 993 F.3d at 384 (cleaned up) – this video and the lack of factual content from Martinez's own allegations prevent a finding that the use of force after Martinez was apprehended was unconstitutionally unreasonable, in violation of the Fourth Amendment, *see Cloud*, 993 F.3d at 384 ("Faced with an uncooperative arrestee, officers properly use measured and ascending actions that correspond to the arrestee's escalating verbal and physical resistance." (cleaned up)).

II.    Martinez has not plausibly pleaded deliberate indifference based on the medical care that he received.

To the extent that Martinez also alleges a claim under 42 U.S.C. § 1983 based on an allegation that a "paramedic shot [him] up [with] pain medication not knowing if [Martinez] had a concussion," Dkt. No. 7 at 2-4 & 7 (cleaned up), following *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), "this circuit has continued to apply a subjective

deliberate indifference standard in non-excessive-force actions alleging a violation of a pretrial detainee's constitutional rights based on episodic acts or omissions," *Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *5 n.7 (5th Cir. June 26, 2024) (per curiam) (citing *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (per curiam)).

"'Deliberate indifference is an extremely high standard to meet' but can be satisfied by a 'wanton disregard for [an arrestee's] serious medical needs.'" *Cope v. Cogdill*, 3 F.4th 198, 207 (5th Cir. 2021) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

Put another way, "[d]eliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) (cleaned up).

And, "[w]hile prescribing incorrect treatments or treatments that cause serious side effects might amount to malpractice, this allegation, without a further showing of deliberate indifference to serious medical needs, does not rise to the level of a constitutional violation." *Morgan v. Tex. Dep't of Criminal Justice McConnell Unit*, 537 F. App'x 502, 507 (5th Cir. 2013) (per curiam) (cleaned up).

And, so, the factual content that Martinez provides not does allow for a plausible claim based on deliberate indifference.

III.    <u>Martinez has not plausibly pleaded a claim against the City of Dallas.</u>

Insofar as Martinez may also sue the City of Dallas, "since that [is] who hire[s] the Dallas police officers," Dkt. No. 7 at 7, "[w]hile municipalities can be sued directly

under § 1983, *Monell* establishes that they cannot be found liable on a theory of vicarious liability or respondeat superior" – and, so, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (cleaned up); *see also Cope*, 2024 WL 3177781, at \*3 ("A municipality may be held liable for a constitutional violation 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978))); *Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 711 (5th Cir. 2023) ("[P]laintiffs' theory hinges entirely on the idea that if enough individuals do something, it becomes the fault of the policymaker. [But, w]ithout a showing of knowledge and acquiescence, such a theory is no more than vicarious liability and cannot survive a motion to dismiss." (citation omitted)).

## Recommendation

The Court should dismiss the complaint as amended with prejudice under 28 U.S.C. § 1915A(b).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 23, 2025

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE